UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| STUART W. STEINER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:17-CV-1-HBG |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18], Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 19 & 20], and Plaintiff's Reply Brief [Doc. 21]. Stuart W. Steiner ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I.  **PROCEDURAL HISTORY**

On September 5, 2012, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., and 1381 *et seq*., claiming a period of disability that began on August 9,

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

2012. [Tr. 136, 150, 254-64]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 226]. A hearing was held on September 23, 2015. [Tr. 37-96]. On November 25, 2015, the ALJ found that Plaintiff was not disabled. [Tr. 19-32]. The Appeals Council denied Plaintiff's request for review [Tr. 1-3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on January 2, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has engaged in substantial gainful activity since August 9, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: bipolar disorder and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he could occasionally climb ramps and stairs, never climb ladders and scaffolds, frequently stoop, never kneel, occasionally crouch, and never crawl. Regarding his mental limitations he can perform

2

simple, routine and repetitive tasks but not at a production rate pace (e.g., assembly line work) and make simple work-related decisions. The claimant could respond appropriately to supervisors and co-workers on an occasional basis. He could never respond appropriately to the public. In addition to normal breaks, the claimant would be off task 5 percent of the time in an 8-hour workday as a result of his moderate limitations of concentration, persistence or pace.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 26, 1965 and was 47 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 9, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 21-32].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

4

> in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V. ANALYSIS

Plaintiff argues that the ALJ's step two and RFC determinations are not supported by substantial evidence. [Doc. 18 at 9-23]. Plaintiff avers that the ALJ erred in concluding that Plaintiff's borderline intellectual functioning was a nonsevere impairment. [*Id.* at 17-19]. The ALJ's error, Plaintiff argues, was not harmless because Plaintiff's RFC does not reflect limitations caused by his impairment. [*Id.* at 19-20]. Plaintiff submits that his RFC is further undermined by the ALJ's flawed assessment of a psychological evaluation performed by Stephen Cartwright, M.S., and Plaintiff's credibility. [*Id.* at 10-17, 20-23]. The Court will address Plaintiff's allegations of error in turn.

### A. Step Two Determination

At step two, the ALJ concluded that Plaintiff's borderline intellectual functioning was nonsevere because Plaintiff displayed "excellent adaptive functioning ability despite purported [Full Scale IQ] results," Plaintiff's past work as an industrial sewer, which qualified as semi-skilled work,[2] demonstrated greater intellectual ability, and Plaintiff's admitted activities of daily living likewise demonstrated that he was not as limited as he alleged. [Tr. 23]. Plaintiff argues that none of these cited reasons are supported by substantial evidence. The Court disagrees with Plaintiff's contention.

To be found disabled, "the ALJ must find that the claimant has a severe impairment or

---

[2] Semi-skilled work is defined as "work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568, 416.968. Such work "may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury," in addition to "other types of activities which are similarly less complex than skilled work, but more complex than unskilled work." *Id.*

impairments" at step two.  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985).  An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[] [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  The burden falls on the plaintiff to "produce or point to *some* evidence that indicates that an alleged impairment impacts his ability to perform basic work activities."  *Johnson v. Astrue*, No. 3:09-CV-317, 2010 WL 2803579, at *5 (E.D. Tenn. June 30, 2010), *adopted by*, No. 3:09-CV-317, 2010 WL 2836137 (E.D. Tenn. July 15, 2010) (emphasis in the original).  Step two is described as "a *de minimis* hurdle" in which "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).

Here, Plaintiff was assessed with a "provisional" diagnosis of borderline intellectual functioning on December 12, 2012, by psychological examiner, Stephen Cartwright, M.S., whose evaluation was reviewed and confirmed by Jodie Castellani, Ph.D.[3]  [Tr. 422].  Although intellectual testing yielded a full-scale IQ ("FSIQ") score of 64, suggesting an "extremely low range of intellectual functioning," Mr. Cartwright found that Plaintiff more likely fell in the borderline range given his work history and adaptive skills.[4]  [Tr. 418-420].  In reaching this conclusion, Mr. Cartwright noted that Plaintiff reported a work history as a sewing machine

---

[3] For ease of reference, and because Mr. Cartwright conducted the actual evaluation with Plaintiff, the Court will only refer to Mr. Cartwright throughout its decision.  However, the Court takes notice that the findings made in the opinion are those of Dr. Castellani as well.

[4] An IQ in the 71-84 range is considered borderline intellectual functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 740, 4th ed. (revised) 2000.

7

operator for the same plant on-and-off for 15 years and up to his alleged onset date; he lived with his girlfriend of five months who he met at a "country music dance club;" and he reported activities of daily living that included no problems attending to his personal care and hygiene, he is able to prepare simple meals, do some yard work, and drive, he generally accompanies his girlfriend to do shopping, he occasionally talks to his brother, he has attended church with his girlfriend, he recently cut limbs off a tree in order to put a carport near his girlfriend's home, and he enjoys shooting pool, canoeing, swimming, and watching "a lot of television." [Tr. 417-18].

Citing to Mr. Cartwright's opinion, the ALJ concluded that Plaintiff's reported activities of daily living do not support a severe impairment of borderline intellectual functioning. [Tr. 22-23]. Plaintiff argues that the ALJ's conclusion is not supported by substantial evidence because Mr. Cartwright nonetheless assessed borderline intellectual functioning despite Plaintiff's reported activities. [Doc. 18 at 17]. Plaintiff's argument is misplaced because "[t]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition." *Higgs*, 880 F.2d at 863. Plaintiff further contends, however, that the diagnosis qualifies as severe because Mr. Cartwright "based [his] opinion on reported psychiatric signs rather than 'symptoms.'" [Doc. 18 at 18]. In other words, Plaintiff suggests the ALJ failed to appreciate that Mr. Cartwright's diagnosis was based on objective testing. [*See id.*]. While Mr. Cartwright certainly took into account Plaintiff's test results, he additionally considered Plaintiff's work history and adaptive skills in reaching his conclusion that Plaintiff instead fell in the range of borderline intellectual functioning. [Tr. 420]. Thus, Mr. Cartwright did not rely on objective evidence alone. *See* 20 C.F.R. §§ 404.1508, 416.1508 (explaining that a "mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings").

Plaintiff also points to the ALJ's observation that Plaintiff exhibited "excellent adaptive

8

functioning ability despite purported FSIQ results," but argues that the ALJ does not identify the specific evidence in support of this assertion. [Doc. 18 at 18]. To the contrary, the activities reported to Mr. Cartwright qualify as adaptive functioning skills which "include[] a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *See West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (holding that the plaintiff did not experience deficiencies in adaptive functioning where he "held a long-term, full-time position with the City of Wilmore, demonstrating his ability to interact socially on a daily basis," and that even with diminished health he "continued to drive a garbage truck on a part-time basis, to care for his daily needs, to pay bills, to shop for groceries, to interact with friends and families, and to engage in numerous other daily activities.").

Here, the ALJ specifically discussed Plaintiff's social, communicative, and daily living skills throughout the decision not only as addressed by Mr. Cartwright, but the ALJ also provided a detailed discussion of treatment notes by Plaintiff's primary care mental healthcare provider, Volunteer Behavioral Health, which document that Plaintiff maintained relationships with girlfriends, friends, and neighbors, he tried to remain active through personal activities, he looked for jobs and indeed worked for at least five months after his alleged onset date, and engaged in other activities of daily living as noted by Mr. Cartwright. [*See e.g.*, Tr. 24-29, 53, 74-76, 82, 348, 418, 443, 504, 624, 727, 754, 785, 875, 1003, 1007, 1017]. Furthermore, treatment notes from Volunteer Behavioral Health consistently rated Plaintiff's Global Assessment of Functioning ("GAF") score as 51, indicating moderate difficulties in social and occupational functioning, throughout his three-year treating relationship. [Tr. 24-29; *see .e.g.*, Tr. 469, 516, 700, 850, 910, 933]; Am. Psychiatric Ass'n, *DSM-IV* 34.

In sum, the Court finds that the ALJ's step two severity finding was within the "zone of

choices" offered by the evidence, and Plaintiff's arguments to the contrary are without merit. *See Her*, 203 F.3d at 389-90 ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.").

Even if the ALJ had erred at step two, it is well settled that the failure to identify an impairment as "severe" is harmless where the ALJ continues the disability determination, as is the case here, and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

Plaintiff argues that the ALJ did not consider the effect of his impairment at subsequent steps because "the ALJ found that the Plaintiff had no impairment of borderline intellectual functioning." [Doc. 18 at 19]. Plaintiff's assertion is belied by the ALJ's explicit finding that Plaintiff's borderline intellectual functioning was not a "*severe* impairment[]." [Tr. 22] (emphasis added). In the RFC portion of the decision, as will be discussed in more detail below, the ALJ unambiguously considered the effects of all of Plaintiff's mental impairments based on treatment records, medical opinions, including Mr. Cartwright's opinion which received "partial weight," and Plaintiff's credibility. [Tr. 24-31]. Accordingly, the Court finds the ALJ did not error at step two.

### B. Opinion of Stephen Cartwright, M.S.

Plaintiff underwent a psychological evaluation with Mr. Cartwright on December 12, 2012, and was found to be moderately limited in concentrating and persisting, moderately-to-markedly limited interacting appropriately with others and adapting to change in work-like requirements, and markedly limited in understanding and remembering. [Tr. 420]. The ALJ assigned "partial weight" to the opinion, expressly rejecting that Plaintiff was markedly limited in any manner. [Tr. 27]. Contrary to Plaintiff's assertion that Mr. Cartwright's opinion should have received greater weight, the Court finds that the ALJ properly assessed and weighed the opinion.

Mr. Cartwright based his foregoing findings on his clinical interview with Plaintiff, Plaintiff's performance on the Wechsler Adult Intelligence Scale (4th edition) ("WAIS-IV") and the Wide Range Achievement Testing-4 ("WRAT-4"), and a function report. [Tr. 415]. Testing revealed a Verbal Comprehension score of 70, a Perceptual Reasoning score of 71, a Working Memory score of 60, a Processing Speed score of 76, a FSIQ score of 64, and a General Ability score of 68. [Tr. 418-19]. Mr. Cartwright summarized that Plaintiff's verbal and nonverbal reasoning abilities were in the borderline range, his working memory was very low, and academic skills were generally commensurate with intellectual functioning but math was an area of struggle. [Tr. 419-20]. Although Mr. Cartwright initially noted that "test results are considered a[] fair estimate of [Plaintiff's] current abilities," he later explained in his summary conclusion that given Plaintiff's work history and adaptive skills, Plaintiff's intellectual functioning fell more in the borderline range of functioning. [*Id.*]. Diagnostic impressions included mood disorder, not otherwise specified, anxiety disorder, not otherwise specified, rule out posttraumatic stress disorder-chronic, and borderline intellectual functioning (provisional). [Tr. 422].

In assigning the opinion partial weight, the ALJ explained that Mr. Cartwright's summary

conclusions did not appear to coincide with several of his observations noted throughout his evaluation. [Tr. 27]. For example, although Mr. Cartwright concluded that Plaintiff was moderately-to-markedly limited in social interactions, Plaintiff reported meeting his girlfriend "at a country music dance club." [Tr. 27, 417, 420]. In addition, the ALJ observed that Mr. Cartwright initially indicated that "FSIQ results appear to be a fair estimate of the claimant's cognitive functioning" but then stated Plaintiff fell more in the borderline range of functioning. [Tr. 27]. The ALJ further observed that Plaintiff's activities of daily living suggested he was less limited than found by Mr. Cartwright. [*Id.*]. Lastly, the ALJ concluded that mental health treatment notes from Volunteer Behavioral Health generally documented normal mental status exams and consistent GAF score of 51. [*Id.*].

The ALJ also considered the opinion rendered by the non-examining state agency psychological consultant at the reconsideration level who opined Plaintiff: (1) could understand, remember, and carry out simple instructions, (2) could interact adequately with others in the work environment but would work best in settings that did not require frequent interaction with the public or peers, (3) could sustain concentration, persistence, and pace for two-hour periods and complete a full workday and workweek, and (4) manage stress, adjust to a work setting, deal with changes in the work setting, and would perform best in settings that did not involve frequent changes in routine or intense production demands. [Tr. 26, 177-78]. The ALJ assigned "some weight" to the opinion, concluding that Plaintiff had mild limitations in activities of daily living and mild-to-moderate limitations in social functioning. [Tr. 29].

Opinions from non-treating, examining and non-examining medical and psychological consultants are evaluated using the balancing factors set forth in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Specifically, "[t]he Commissioner [] weighs these opinions based on the

examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheartv. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Although the ALJ must consider all the medical opinions of record, the "ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a" claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Rather, it is the Commissioner's prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work." *Luukkonen v. Comm'r Soc. Sec.*, 653 F. App'x 393, 402 (6th Cir. 2016) (citing 20 C.F.R. § 416.929(c)(1), -(d)(2)).

Plaintiff disagrees with the ALJ's finding that meeting his girlfriend at a country music dance club suggested he had greater social abilities than found by Mr. Cartwright. [Doc. 18 at 27]. The Court finds that the ALJ could reasonably concluded that Plaintiff's ability to go to a club, socialize, and meet people contradicted marked limitations in social interaction. Moreover, as discussed above, treatment records contain numerous instances of Plaintiff interacting with friends and neighbors and attempts to stay active outside of his home. Thus, the ALJ properly concluded that Plaintiff was not markedly limited in social functioning.

Plaintiff also attempts to argue that the ALJ's interpretation of Mr. Cartwright's opinion is flawed with regard to test results. To reiterate, the ALJ noted that Mr. Cartwright initially found that "*FSIQ results* appear to be a fair estimate of [Plaintiff's] cognitive functioning" but then stated Plaintiff was more likely to fall in the borderline range of functioning. [Tr. 27] (emphasis added). Plaintiff corrects the ALJ by stating that Mr. Cartwright actually found that "*test results*," not FSIQ

13

results, "appear to be a[] fair estimate of [Plaintiff's] cognitive functioning." [Doc. 18 at 13] (quoting Tr. 418). However, "test results" encompass Plaintiff's FSIQ results, and therefore, Plaintiff's argument amounts to a distinction without a difference. *See Simonetta v. Comm'r of Soc. Sec.*, No. 13-10607, 2014 WL 806416, at *4 (E.D. Mich. Feb. 28, 2014) ("Just as no trial is perfect, no administrative hearing or opinion is either; thus, in analyzing an ALJ's decision, a reviewing court is to look for fatal gaps or contradictions and not nitpick in search of essentially meaningless missteps." (cleaned up).[5]

The Court is also unpersuaded by Plaintiff's assertion that treatment notes from Volunteer Behavioral Health do not provide substantial evidence supporting the ALJ's assignment of partial weight to Mr. Cartwright's opinion. [Doc. 18 at 14-16]. Plaintiff has an extensive three year treating relationship with Volunteer Behavioral Health that began after he applied for disability benefits. [Tr. 27-29]. As found by the ALJ, mental status exam findings, including assessment of Plaintiff's memory, were largely normal or mild to moderate at worse.[6] [*See e.g.*, Tr. 447-48, 614-15, 648, 671, 687, 731, 765, 862, 900, 930-31]. Between April 2013 and August 2013, Plaintiff did not receive any treatment while he performed substantial gainful activity as a sewing machine operator. [Tr. 28, 348, 508]. During a medication management appointment on November 2013,

---

[5] *See United States v. Joiner*, No. 16-6833, 2018 WL 1211942, at *4 (6th Cir. Mar. 8, 2018) (using "cleaned up" parenthetical to remove internal quotations and alterations to the language of the cited court opinion).

[6] Plaintiff appears to suggest that moderate limitations conflicts with his RFC. [*See* Doc. 18 at 16]. However, "courts generally agree that although the Social Security regulations do not define a 'moderate limitation,' it is commonly defined on agency forms 'as meaning that the individual is still able to function satisfactorily.'" *Ziggas v. Colvin*, No. 1:13-cv-87, 2014 WL 1814019, at *6 (S.D. Ohio May 6, 2014) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006)).

Plaintiff reported he was not taking any medications while he worked because he thought it made him tired. [Tr. 28, 530]. Plaintiff's psychiatrist, Robert Glenn, M.D., noted that Plaintiff's medication would actually benefit him while he worked because it would help him to focus and it "is not prescribe for people [who are] not working." [Tr. 530].

On February 26, 2014, Plaintiff appeared without an appointment and demanded to be seen for treatment, complaining of auditory and visual hallucinations where he would hear his deceased father knocking at his front door. [Tr. 29, 742, 772-73]. Plaintiff had routinely denied hallucinations in the past. [Tr. 27, 416, 772-73]. During his therapy session, Plaintiff "repeatedly" requested that his disability lawyer have access to his medical records.[7] [Tr. 742]. Plaintiff was also adamant that his therapist document his progress as worsening. [*Id.*]. Treatment notes reveal suspicion that Plaintiff was malingering in an effort to strengthen his disability claim and that Plaintiff's "hallucinations do not match what is typical for hallucinations." [Tr. 29, 772-73, 763, 1001].[8]

In addition, throughout the entire course of treatment, Plaintiff was consistently rated with a GAF score of 51, indicating moderate difficulties in functioning. [*See e.g.*, Tr. 468, 516, 610, 700, 773, 850, 895, 910, 923, 933].

---

[7] The Court notes that Plaintiff's sudden onset of hallucinations coincides with the agency's January 23, 2014 denial of Plaintiff's application for disability insurance benefits and supplement security income at the reconsideration level, and the agency's February 8, 2013 appointment of an attorney to represent Plaintiff's claims. [Tr. 205, 220-25].

[8] The Court further observes that an April 2014 treatment note by Jeffrey D. Bull, Psy.D., at Cherokee Health Systems, where Plaintiff primarily received medical care for physical ailments, documented that Plaintiff "repeatedly mentions frustrations related to disability process, his efforts to obtain disability, and factors to 'help my case,'" including receiving services at the Crisis Stabilization Unit. [Tr. 826]. Dr. Bull observed it was "[u]nclear if secondary gain (specifically, [Plaintiff's] reported desire to obtain disability benefits) may be a factor in [Plaintiff's] presentation." [*Id.*].

The Court concludes that substantial evidence supports the ALJ's conclusion that treatment records undermined Mr. Cartwright's opinion. Plaintiff maintains that the ALJ's reliance on GAF scores was improper. [Doc. 18 at 14]. "A GAF score is [] not dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues." *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009)); *see Bryce v. Comm'r of Soc. Sec.*, No. 12–CV–14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014) ("Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis."). The Social Security Administration has more recently clarified that which has long been supported by Sixth Circuit caselaw: GAF scores are to be treated like any other piece of evidence in the case record in that unless a GAF score is well-supported and consistent with other record evidence it is entitled to little weight. Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM–13066 (July 22, 2013) REV (Oct. 14, 2014).[9] Here, Plaintiff's GAF scores remained consistent over a three year period, coincided with routine, monthly treatment, and are accompanied by mental status exams that explain and support the scores. Therefore, the ALJ properly relied on Plaintiff's GAF scores as one piece of evidence exhibiting Plaintiff's mental functioning.

As a final matter, the Court notes that Plaintiff places considerable emphasis on his WAIS-IV and WRAT-4 results in arguing that Mr. Cartwright's opinion is well-supported and should

---

[9] One difference the administrative message established is that GAF scores assigned by "acceptable medical sources" are now to be considered "medical opinions."

have received greater deference. However, the Sixth Circuit Court of Appeals has observed that "[t]he regulations do not limit the question of validity to test results alone in isolation from other factors." *Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 269 (6th Cir. 1991). Indeed, the ALJ is not required to accept wholesale intellectual test scores "when substantial evidence supports the contrary conclusion or the claimant's allegations of her capabilities are deemed not credible." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 721 (6th Cir. 2012); *see Russell v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-291, 2014 WL 1333262, at *5 (N.D. Ohio Mar. 31, 2014) ("When determining the validity of relevant IQ scores, the ALJ has latitude to consider a variety of evidence . . . ."). Furthermore, the ALJ, not Mr. Cartwright, is charged with determining Plaintiff's RFC. *Luukkonen*, 653 F. App'x at 402. The Court finds that Plaintiff's activities of daily living, work history, adaptive functioning skills, mental health treatment records, GAF scores, and other opinion evidence constitutes substantial evidence that conflicts with Mr. Cartwright's marked limitations. Accordingly, the Court finds that substantial evidence supports the ALJ's assignment of partial weight to Mr. Cartwright's opinion.

### C. Credibility

The ALJ discounted Plaintiff's credibility on the basis that Plaintiff (1) worked as a sewer between April 2013 and August 2013, which work constituted substantial gainful activity; (2) applied for disability shortly after meeting his girlfriend who also receives benefits from the Social Security Administration and the Department of Veterans Affairs, a finding the ALJ characterized as "problematic;" (3) did not seek mental health treatment until after he applied for disability; and (4) discontinued all form of treatment while he worked as a sewer between April 2013 and August 2013. [Tr. 30]. Plaintiff argues that several of these reasons, as well as other observations made

by the ALJ throughout the decision, are either taken out of context or not supported by substantial evidence. [Doc. 18 at 20]. The Court concludes that the ALJ did not commit reversible error.

Discounting credibility is appropriate when the "ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "[A]n [ALJ's] credibility findings are virtually unchallengeable" absent compelling reasons. *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-13 (6th Cir. 2010)). Nonetheless, the ALJ's finding must be supported by substantial evidence. *Walters*, 127 F.3d at 531.

Plaintiff argues there is nothing "problematic" about applying for disability benefits after he began dating his girlfriend who also receives benefits. [Doc. 18 at 21]. Candidly, the Court agrees with Plaintiff and finds that the ALJ provides no supported basis for concluding otherwise. Even so, the Court finds the error harmless because the ALJ's additional cited reasons—substantial gainful activity performed after Plaintiff's alleged onset date, the lack of mental health treatment received until after filing for disability, and the cessation of treatment altogether while Plaintiff worked—are supported by substantial evidence. *See Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir.1988) ("Any work done during a period of claimed disability may show a claimant can engage in substantial gainful activity."); *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. Feb. 3, 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.").

Plaintiff's additional arguments as to the validity of the ALJ's credibility finding are unavailing. Plaintiff cites to a portion of the ALJ's decision in which Plaintiff was noted to have attempted to get unemployment benefits, suggesting Plaintiff was "ready, willing and able to

work." [Tr. 28]. Plaintiff takes issue with the ALJ's finding because Plaintiff merely inquired about applying for benefits. [Doc. 18 at 21] (citing Tr. 622). Although Plaintiff may not have applied or received unemployment benefits, he ignores the fact that he instead obtained a job and worked at the level of substantial gainful activity between April 2013 and August 2013. "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). "The Social Security Act provides that an individual who is working and engaged in substantial gainful activity is not entitled to disability benefits." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996). Plaintiff's employment after his alleged onset date was an appropriate factor specifically considered by the ALJ in discounting Plaintiff's credibility.

Plaintiff also suggests that the ALJ's observation that Plaintiff "has no inpatient psychiatric hospitalizations" was inappropriate because the ALJ failed to address that Plaintiff had no health insurance.[10] [Doc. 18 at 22]. The ALJ, however, did not discount Plaintiff's credibility on this point but was merely reciting, correctly, to Mr. Cartwright's opinion which noted same. [Tr. 25-26]. Plaintiff additionally complains that his activities of daily living, as discussed at length above, is not indicative that Plaintiff can perform work activities. [Doc. 18 at 22]. While Plaintiff's argument is not only undermined by the fact that he worked at the level of substantial gainful

---

[10] Although Social Security Ruling 96-7p, 1996 WL 374186, at *7-8 (July 2, 1996), cautions adjudicators against drawing adverse inferences from a claimant's lack of consistent or frequent medical treatment where the claimant is unable to afford treatment or does not have access to free or low-cost medical services, the ruling's consideration is inapplicable here. Plaintiff received routine and monthly mental health treatment from Volunteer Behavioral Health throughout the entire period under review in the form of medication management, interpersonal psychotherapy, and case management. Plaintiff has never alleged he could not obtain treatment, or that he had been denied treatment, due to a lack of insurance, nor could he as he received treatment—both physical and mental—during the entirety of the period under review.

activity during the period he alleged he was disabled, the ALJ did not cite to Plaintiff's activities of daily living as evidence comparable to work activity that can be performed on a sustained and continued basis. Rather, the ALJ relied on Plaintiff's activities as evidence that undermined the severity of his borderline intellectual functioning and the supportability of Mr. Cartwright's marked limitations. [*See* Tr. 23, 27].

In sum, the Court finds that the ALJ's credibility assessment is supported by substantial evidence, and Plaintiff's assertions to the contrary are not well-taken.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 19**] will be **GRANTED**. The Commissioner's decision will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

<span style="text-align:right">*/s/ Bruce Guyton*
United States Magistrate Judge</span>